**DAVID W. GRIFFIN,**

      **Petitioner,**

**v.**                                        **Case No.: 8:16-cv-2975-T-27SPF**
                                             **Criminal Case No.: 8:15-cr-157-T-27SPF**

**UNITED STATES OF AMERICA,**

      **Respondent.**

_____/

## ORDER

**BEFORE THE COURT** are Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence (cv Dkt. 1), Memorandum in Support (cv Dkt. 2), the United States'

Response (cv Dkt. 5), and Petitioner's reply (cv Dkt. 9). Upon review, Griffin's § 2255 motion is

**DENIED**.

## BACKGROUND

In 2015, Griffin was indicted and charged with one count of mail fraud, nine counts of

bankruptcy fraud, one count of aggravated identity theft, and two counts of making a false

statement under oath. (cr Dkt. 1). Pursuant to a written plea agreement, he pleaded guilty to one

count of bankruptcy fraud (Count V) and one count of making a false statement under oath (Count

XII). (cr Dkts. 37, 47, 51). He stipulated to the factual basis in the plea agreement:

> [Griffin] devised a foreclosure rescue scheme to defraud homeowners
> seeking assistance with their mortgage notes and foreclosure actions, the
> creditors holding those notes, the [Federal Housing Administration] who
> insures the mortgage notes, or Fannie Mae who guaranteed the mortgage
> notes, and to obtain money and property from the homeowners by means of
> materially false pretenses, representations, promises, and omissions.
> . . .

1

> The victim homeowners conveyed their properties to . . . entities controlled by [Griffin]. The homeowners paid rent to [him] and relied on [his] false promises to stop foreclosure, obtain the mortgage note and sell their houses back to them.
>
> [He] prevented creditors from lawfully foreclosing on the homeowner victims' former properties, by filing or causing to be filed, fraudulent bankruptcies on behalf of the victims without their knowledge or consent. These bogus bankruptcy petitions invoked the automatic stay provision of federal bankruptcy[] law which brought an immediate halt to any foreclosure against the homeowners' property. . . .
>
> [Griffin] also made a false oath or account concerning a material matter to the Office of United States Trustee about [a] bankruptcy petition. . . . [He] testified under oath pursuant to a Rule 2004 Examination notice. On several occasions, [he] was asked about the bankruptcy filed on behalf of [one of his entities]. [He] denied knowing anything about this bankruptcy filing, when, in fact, [he] prepared the bankruptcy petition and had [one of his] employee[s] sign and file the petition.

(cr Dkt. 37 at 15-18).

Griffin further "acknowledge[d] understanding the nature and elements of the offense(s) with which [he] has been charged and to which [he] is pleading guilty." (Id. at 3). In exchange for his guilty plea, the United States agreed to dismiss the remaining counts, recommend a two-level reduction for acceptance of responsibility, and not oppose Griffin's request for a sentence at the low-end of the guidelines range. (Id. at 4-5; cv Dkt. 2 at 2).

During the change of plea hearing, Griffin denied being threatened or forced to plead guilty or being promised anything outside the plea agreement, confirmed that he spoke with counsel before deciding to plead guilty, and expressed satisfaction with counsel's representation. (cr Dkt. 77 at 9, 19-20). He further acknowledged that the recommendations included in the plea agreement were not binding on the sentencing court. (Id. at 9).

Griffin's counsel filed a written motion for a sentencing variance, specifically a term of probation, that was ultimately denied. (cr Dkts. 53, 64, 69 at 35). At sentencing, the government moved for a downward departure based on acceptance of responsibility, which was granted (cr Dkts. 62-63, 69 at 4). The guidelines range was 10 to 16 months. (cr Dkt. 69 at 4; cr Dkt. S-59 at 1). Citing the § 3553(a) factors, the court sentenced Griffin to 36 months imprisonment followed by 3 years supervised release. (Id. at 29-32). He did not appeal. (cv Dkt. 1 at 1).[1]

In Griffin's timely § 2255 motion, he raises three ineffective assistance of counsel claims, relating to the plea agreement (ground one), sentencing (ground two), and counsel's failure "to fully set forth the factual background of [Griffin's] case." (cv Dkt. 1 at 4, 5, 6). In support, he relies on his argument and facts in Memorandum In Support. (Id.). The United States filed a response in opposition, which includes an affidavit from his counsel.[2] (cv Dkt. 5). Griffin filed a reply, to which he attached his affidavit that does not appear to be sworn to. (cv Dkt. 9).[3]

---

[1] The plea agreement included an appeal waiver in which Griffin waived

> the right to appeal [his] sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds [his] applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then [he] is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

(cr Dkt. 37 at 12-13).

[2] Counsel's affidavit does not create material issues of fact or require an evidentiary hearing, since the record belies Griffin's contentions. Indeed, an evidentiary hearing is not required if the § 2255 motion "and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

[3] This Court is mindful of its responsibility to address and resolve all claims raised in Griffin's motion. *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (instructing "the district courts to resolve all claims for relief raised in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254"). That said, nothing in *Clisby* requires or suggests consideration of a claim raised for the first time in a reply.

**STANDARD**

To establish ineffective assistance of counsel, Griffin must demonstrate that (1) counsel's performance was constitutionally deficient, and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. And "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation and internal quotation marks omitted).

The *Strickland* test also applies to challenges of guilty pleas. *See Scott v. United States*, 325 F. App'x 822, 824 (11th Cir. 2009). The Eleventh Circuit explains:

> In this context, the first prong of *Strickland* requires the defendant to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases. The second prong focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process, meaning the defendant must show a reasonable probability that, but for counsel's errors, he would have entered a different plea.

*Id.* (internal quotation marks and citations omitted); *see also Lafler v. Cooper*, 566 U.S. 156

---

For example, Griffin briefly argues in his reply that the appeal waiver in his plea agreement is not enforceable because "in this case it clearly was due to the invalid and unconstitutional position by defense counsel that Griffin could not succeed in the proceedings." (cv Dkt. 9 at 6). The claim, in any event, is without merit. The case he cites, *United States v. Warner-Freeman*, 270 F. App'x 754 (11th Cir. 2008), does not support his contention. There, the appellate court found the plea waiver valid because the district court addressed the defendant and confirmed that she understood the waiver's terms. 270 F. App'x at 757. The same is true here. (cr Dkt. 77 at 17-18). Accordingly, counsel's advice to plead guilty does not invalidate the appeal waiver.

(2012).

Significant to Griffin's claims of ineffective assistance of counsel, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial," and "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). Counsel must make an "independent examination of the facts, circumstances, pleadings and laws involved, [and] offer his informed opinion as to the best course to be followed in protecting the interests of the client." *Id.* Collateral relief is only available if a petitioner "prove[s] serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." *Lopez v. Reid*, No. 214CV584FTM38MRM, 2017 WL 2869405, at *2 (M.D. Fla. July 5, 2017) (quoting *McMann v. Richardson*, 397 U.S. 759, 774 (1970)).

## DISCUSSION

Since Griffin does not demonstrate that his counsel's performance was constitutionally deficient or that he was prejudiced as a result of any deficiency, his ineffective assistance of counsel claims fail. Moreover, any claims relating to his sentence independent of his ineffective assistance counsel claims are not cognizable in a § 2255 proceeding, "as they fail[] to allege a constitutional violation." *Marion v. United States*, No. 16-15971-G, 2017 WL 8233896, at *7 (11th Cir. Oct. 24, 2017); *see also Spencer v. United States*, 773 F.3d 1132, 1139 (11th Cir. 2014) (concluding that on a § 2255 motion a prisoner may only challenge a sentencing error "when he can prove that he is either actually innocent of his crime or that a prior conviction used to enhance his sentence has been vacated"). And those claims are procedurally defaulted because Griffin did

not raise them on direct appeal. *See McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) ("Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.").[4]

With respect to his claims of ineffective assistance which he implicitly contend undermined the knowing and voluntary nature of his guilty plea, his Rule 11 change of plea hearing demonstrates that his guilty plea was knowing and voluntary. While under oath, he agreed to the factual basis in the plea agreement (Dkt. 77 at 20-24), confirmed he had not been threatened or coerced to plead guilty, and that he had discussed his decision with counsel before entering his plea (id. at 9, 19-20). He confirmed that he understood the potential penalties (id. at 13-14), that the recommendations in the plea agreement were not binding on the court (id. at 9), that the sentencing guidelines were advisory and the court could impose a sentence greater or less than the guidelines range (id. at 16), and that he waived his constitutional rights by pleading, including his

---

[4] The Eleventh Circuit explains:

> A claim is procedurally defaulted, such that the prisoner cannot raise it in a collateral proceeding, when a defendant could have raised an issue on direct appeal but did not do so. A claim is procedurally defaulted even if it was foreclosed explicitly by existing circuit precedent at the time of the defendant's direct appeal. Defendants can avoid the procedural bar by establishing that either of the following exceptions applies: (1) cause and prejudice, or (2) a miscarriage of justice based on actual innocence.

*Hill v. United States*, 569 F. App'x 646, 648 (11th Cir. 2014) (citations omitted). Griffin cannot prove cause or prejudice on any claim. To the extent he may argue actual innocence as a basis to avoid procedural default, the claim fails. (cr Dkt. 9 at 3, 6). Actual innocence applies when a petitioner is factually innocent of the crime of conviction. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). As explained below, Griffin presents no evidence establishing that he is factually innocent of the charges to which he pleaded guilty. And to the extent he raises a freestanding actual innocence claim, it is without merit.

This default does not include the ineffective assistance of counsel claims, which are typically brought in a collateral proceeding and not on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 509 (2003); *United States v. Balcazar*, 775 F. App'x 657, 660 (11th Cir. 2019).

right to a jury trial (id. at 19).

***Ground One – Ineffective Assistance Relating to the Plea Agreement***

In Ground One, Griffin "asserts that counsel misled him in negotiation of the plea agreement and exhorting him to accept such a plea agreement." (cr Dkt. 2 at 3). He argues that although he "maintained that he had no intent to commit any criminal offense or defraud any individual," counsel "represent[ed] that [he] would likely receive a probationary sentence and at the very maximum . . . a sentence not exceeding one year." (Id. at 3-4). In short, he argues that "[c]ounsel had an obligation . . . to fully explain the entirety of the range of possibilities and otherwise had such explanation been fully conveyed, [he] would not have entered into the plea agreement." (Id. at 6).

Counsel avers that Griffin thought the plea agreement was in his best interest and he never intended to go to trial. (cr Dkt. 5-1 at 3). Counsel further avers he never told Griffin he would be sentenced to 12 months, that he informed him of the statutory maximum and that "a downward variance would be sought." (Id. at 3-4). Regardless of these seemingly competing assertions, Griffin's Rule 11 colloquy demonstrates that he entered a knowing and voluntary guilty plea with a full appreciation of the potential penalties he faced, independent of what counsel may have told him, and therefore belies the assertions he now makes. Moreover, his argument contradicts his contention that counsel's advice undermined the knowing and voluntary nature of his guilty plea.

Griffin acknowledges that counsel recommended that he accept the plea agreement in light of the likelihood of conviction at trial, which could trigger a two-year mandatory minimum for aggravated identity theft. (cv Dkt. 2 at 4; cv Dkt. 9 at 4). That advice does not rise to "psychological

coercion."[5] (cv Dkt. 9 at 6); *see United States v. Taylor*, 254 F. Supp. 3d 145, 159 (D.D.C. 2017) (finding no ineffective assistance of counsel where petitioner "does not contest the accuracy of his counsel's advice, and correctly informing a defendant that he may face a greater sentence after conviction at trial is not coercion, and in fact, failure to do so may qualify as ineffective assistance of counsel" (citations omitted)).

Indeed, during his change of plea hearing, Griffin denied being threatened or forced to plead guilty, confirmed that he spoke with counsel before deciding to plead guilty, and expressed satisfaction with counsel's representation. (cr. Dkt. 77 at 7, 9, 19-20); *see also Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) ("There is a strong presumption that statements made during the plea colloquy are true."); *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984) ("When a defendant pleads guilty relying upon his counsel's best professional judgment, he cannot later argue that his plea was due to coercion by counsel."). And although Griffin now argues he "first became aware of [the possibility of a sentence exceeding the sentencing guidelines] at the sentencing hearing," he acknowledges that counsel had explained the statutory maximum. (cv Dkt. 2 at 4-5). Moreover, the court explained that "[t]he sentencing guidelines are advisory[, meaning] the Judge may give you a sentence that is more or less than what your advisory guideline range calls for," and that the parties' recommendations were not binding. (cr Dkt. 77 at 9, 16).

Finally, counsel's performance was not deficient in predicting, even mistakenly, what sentence would be imposed, or whether the sentence would be within or outside the advisory

---

[5] Nor was counsel's recommendation for Griffin to plead guilty tantamount to "advis[ing] [him] to lie to the Court" in violation of the Rules of Professional Conduct, such that it constitutes deficient performance. (cv Dkt. 9 at 4).

guidelines range, where, as here, the Rule 11 colloquy demonstrates that Griffin was informed of the possible sentence. *See Langford v. United States*, No. CIV.A09-00251WS-M, 2009 WL 6467043, at *9 (S.D. Ala. Oct. 23, 2009), *report and recommendation adopted*, No. CIV. 09-0251-WS, 2010 WL 1949480 (S.D. Ala. May 12, 2010) (citations omitted) ("[A] claim of ineffective assistance of counsel is not supported by a misjudgment in sentence length."); *see also United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (affirming the denial of the defendant's motion to withdraw his guilty plea where, although defense counsel incorrectly predicted the length of the sentence, the defendant was informed of the possible sentence during the plea colloquy); *Johnson v. Massey*, 516 F.2d 1001, 1002 (5th Cir. 1975) ("[A] good faith but erroneous prediction of a sentence by a defendant's counsel does not render the guilty plea involuntary.").

Griffin also contends that counsel was ineffective in failing to argue that a sentence at the low-end of the guidelines would comport with the § 3553(a) factors. (Dkt. 2 at 5). But counsel did precisely that. First, he filed a written motion for a variance below the guidelines, and argued for that at sentencing. (cr Dkt. 69 at 4). And in arguing for probation, he expressly referenced the § 3553(a) factors and pointed out Griffin's lack of a serious criminal record, the substance of the crime, his family circumstances, early cooperation, and acceptance of responsibility. (Id. at 4-7).

Finally, Griffin contends that counsel was ineffective in failing to object to the United States' "implication and argument[] for a sentence that exceeded the low end of the guidelines" through its sentencing memorandum, presentation of witnesses, and victim impact statements, in contravention of the plea agreement. (cv Dkt. 2 at 5-6). This contention is without merit and belied by the sentencing transcript.

The plea agreement provided:

> At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose [Griffin's] request to the Court that [he] receive a sentence at the low end of the applicable guideline range, as calculated by the Court. [He] understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, [he] will not be allowed to withdraw from the plea.

(cr Dkt. 37 at 5).

The agreement did not prohibit the government from submitting a sentencing memorandum and presenting witnesses and victim impact statements. And while the government opposed a sentence of probation, it did not object to a request for a sentence at the low-end of the guidelines. (cr Dkt. 69 at 10). There was, therefore, no basis on which to object, and Griffin does not explain how counsel was ineffective.

In any event, Griffin fails to demonstrate prejudice as there is no indication that had counsel objected to the government's presentation on the basis that it contravened the plea agreement, he would have received a lower sentence. Indeed, the pre-sentence report and stipulated factual basis in the plea agreement included similar information. (cr Dkt. 37 at 15-18; cr Dkt. S-58 at 6-7).[6] Accordingly, counsel's performance has not been shown to have been deficient, and there is no showing of prejudice even if counsel had a basis to object and failed to do so. *See Street v. United States*, 359 F. App'x 109, 112 (11th Cir. 2009) ("Because there was no legal basis for objecting to [the defendant's] sentence, his counsel was not deficient for failing to do so and his failure to do

---

[6] Although unnecessary to resolve Griffin's ineffective assistance of counsel claims, a district court need not provide defendants with advance notice under Rule 32(h) of the Federal Rules of the Criminal Procedure that it will impose a sentence above the guidelines range based on § 3553(a) factors. *See Irizarry v. United States*, 553 U.S. 708 (2008).

so did not prejudice [him].”). Accordingly, Griffin's claim of ineffective assistance of counsel in Ground One is denied.

***Ground Two – Ineffective Assistance Relating to Sentencing***

In Ground Two, Griffin contends that counsel was ineffective regarding allocution during sentencing. His contention is without merit.

I. <u>Griffin's Allocution</u>

Griffin contends the court at sentencing

> directed [him to] provide testimony. [He] had not been prepared to do so nor had counsel discussed any such testimony and how such may impact [his] sentencing. Counsel had not advised [him] that as a part of his Sixth Amendment rights he was not compelled to testify, despite the Court's inclination and request that [he] provide testimony. Counsel did not notify [him] that any testimony that he provided may or would be weighed and weighted against him in mitigation and application of the § 3553 factors. . . . [C]ounsel without consultation to [him], indicated to the court that "[he] would like to make a statement. You can do it right here. Stand up."

(cv Dkt. 2 at 7).[7]

---

[7] During allocution, for example, Griffin stated that his conduct "wasn't in bad intentions" or to "gain anything for [himself]," was meant to "help the homeowners," and that "everything was pretty much . . . overrated, to be honest with you." (Dkt. 69 at 12). The court informed him that he was not required to answer questions about his companies' ongoing collection efforts, and he chose to remain silent. (Id. at 26).

Griffin describes his statements as "testimony," but the record does not reflect that he was sworn in. *See United States v. Gilbert*, 244 F.3d 888, 924 n.79 (11th Cir. 2001) (noting that Black's Law Dictionary defines allocution as an "unsworn statement" that "is not subject to cross examination"). Courts have also found that "the defendant's right of allocution is not unlimited" and "a sentencing judge may impose procedural limitations during an allocution, so long as the judge personally addresses the defendant and offers him the opportunity to address the court before the sentence is pronounced." *United States v. Ward*, 732 F.3d 175, 182-83 (3d Cir. 2013). Additionally, in terms of a defendant's opportunity to allocate, the Supreme Court has noted:

> failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.

Griffin argues counsel was ineffective in "failing to determine whether [he] wished to testify," and by failing to object to the court not conducting "a specific colloquy . . . to ensure, on the record, that [he] knowingly and willing[ly] decided to testify." (Id. at 8). He contends that during his exchange with the court, "[c]ounsel did not interject, request permission [from] the Court to advise or speak with [him] or take any appropriate action to protect [him]." (Id.). Contrary to these contentions, counsel avers that he "explicitly told [Griffin] that he could give a statement and that his statement could go a long way in the court recognizing his remorse and acceptance of responsibility," and that "[i]t was clearly understood that [he] would give a statement about the facts of the case." (cv Dkt. 5-1 at 4-5). Regardless of this seeming dispute, the sentencing transcript belies Griffin's contentions.

Rule 32(i)(4)(A)(ii) provides that, before imposing sentence, the court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Here, Rule 32 was complied with:

> Defense counsel: Judge, if the Government could call their witnesses maybe out of order, I think our witness may be here shortly -- the other witness.
>
> The Court: I'd like to hear from [Griffin]. We'll certainly accommodate the witness if he or she is running late.
>
> Defense Counsel: Mr. Griffin would like to make a statement. You can do it right here. Stand up.

(cr Dkt. 69 at 11-12). Moreover, even crediting Griffin's assertion that his counsel did not notify him of the possibility of providing a statement, Griffin acknowledged at the change of plea hearing that he understood the sentencing court would give him an opportunity to speak:

---

*Hill v. United States*, 368 U.S. 424, 428 (1962) (internal quotation marks and citations omitted).

> The Court: At your sentencing hearing, obviously, you'll be present, the Judge will give you an opportunity to speak, give your counsel a chance to present such information and evidence as is relevant to the proceedings.
> . . .
> Do . . . you understand this process as I've explained it to you?
>
> Griffin: Yes, Your Honor.

(cr Dkt. 77 at 15-16).

Griffin cites no authority finding deficient performance or prejudice based on counsel's failure to notify a defendant of the opportunity to address the court at sentencing. In *United States v. Brito*, 601 F. App'x 267, 272-73 (5th Cir. 2015), the court did not resolve whether counsel had a duty to provide advice about allocution because the defendant could not establish prejudice. 601 F. App'x at 272-73. During allocution, the defendant "stated that he had made a mistake and that he regretted it. However, he went on to state that he . . . had nothing to do with [certain co-conspirators]," and was "never there in the picture." *Id.* at 269-70. The district court stated it was "contemplating a sentence outside of the guideline range, but [] was waiting to hear something from [the defendant]," expressed concern about the defendant's continued denial of criminal conduct, and ultimately sentenced within the range because the court "can't come up with anything when the defendant doesn't give me anything even here during allocution." *Id.*

In finding no prejudice, the court noted that "even assuming a duty to give advice about allocution, [the defendant] does not and cannot suggest that trial counsel must give the defendant a script. Nor is allocution specifically a time to talk about 'why I pleaded guilty.' A defendant is free to talk about that, of course, but that is not its specific purpose." *Id.* at 273. Similarly, the court noted it was "perfectly logical that minimizing one's role in an offense," which the defendant did even without advice from counsel, was "information to mitigate a sentence." *Id.* at 272. The court

further found it relevant that the defendant did not indicate during the § 2255 proceeding that, had counsel provided adequate advice, he would have "stated anything differently that would be substantially likely to produce a different result," such as admitting to involvement in the related conduct. *Id.* at 272-73.

Likewise, it is not apparent that Griffin would have responded differently to the court had counsel explained the allocution procedure, or that, had Griffin responded differently or counsel interjected following his statements, a lower sentence would have been imposed. Like the defendant in *Brito*, Griffin continues to avoid responsibility for his criminal conduct. In fact, he now claims that he is actually innocent. (cv Dkt. 2 at 3; cv Dkt. 9 at 3, 6). At most, in hindsight and without factual support, he suggests that he might have remained silent. (cv Dkt. 2 at 11, 13).

Like the defendant in *Brito*, by attempting to minimize his role in the offense and pointing to his involvement in the community, Griffin was able to argue for mitigation. (cr Dkt. 69 at 12-13). If his attempt to mitigate back-fired, he has only himself to blame. Counsel's performance is not shown to have been deficient, and any prejudice resulting from Griffin's statements to the court was the result of his own doing, not counsel's. Griffin has not established ineffective assistance of counsel on this claim.

## II.  The Victims' Allocution

Griffin contends that he "had not been advised of [the] full nature of testimony that [a victim] would provide and accordingly he could not have anticipated nor adequately prepared for such testimony." (cr Dkt. 2 at 9). He further argues that counsel was ineffective in not objecting to the victim's statements about "how [his] conduct not only impacted her but other victims as well" and by not requiring the United States to call each victim to testify. (Id.). Finally, he contends

"counsel should have . . . [moved] or otherwise [made] some argument at a later time in order to address the testimony that had been provided by [the victim]." (Id. at 10).

Griffin does not explain, however, on what basis counsel should have objected. And counsel is not ineffective in failing to make a meritless objection or raise a meritless argument. *Freeman v. Attorney General, State of Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."). Indeed, the court is required to hear from victims in determining the appropriate sentence. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the . . . conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); USSG § 1B1.4 (same); 18 U.S.C. § 3771(a)(4) (providing that victims have "[t]he right to be reasonably heard at any public proceeding in the district court involving . . . sentencing").

Regardless, Griffin cannot demonstrate prejudice. The substance of the victims' statements is included in the stipulated facts in the plea agreement and pre-sentence report. (cr Dkt. 69 at 14-25). And he does not explain how his preparation for their allocution or requiring the United States to call each witness would have resulted in a lower sentence. Finally, he does not explain the basis for any motion or argument that counsel could have made at some later time. (cv Dkt. 2 at 10). Accordingly, Griffin is not entitled to relief on Ground Two.

***Ground Three – Ineffective Assistance Relating to the Case's Factual Background***

In Ground Three, Griffin raises several contentions. He contends counsel was ineffective in failing to "fully investigate his attorney's role in administration of duties on [his behalf] and fully understanding the scope of liability prior to entering into the plea agreement," instructing

attorney Montanez to not provide complete information to the court, and failing to "await the arrival of the other witnesses who intended to testify on [Griffin's] behalf, or even subpoena these witnesses." (Id. at 16). Each contention is without merit.

I. Counsel's Investigation

Griffin first asserts that "trial counsel was ineffective in advising that [he] enter into a plea agreement with the United States without properly reviewing and understanding the underlying factual basis as such related to the offense charged and the criminal conduct that would be requisite in order to warrant a guilty plea." (Id. at 14). Specifically, Griffin contends he told counsel he was not guilty, since attorneys "were in charge of and completely responsible for running" the companies and he had no direct knowledge of certain matters. (Id.). He further contends counsel failed to contact or discuss the matter with those attorneys. (Id. at 14-15). Essentially, he contends that, had counsel been aware of the facts of the case, counsel would have advised against entering a guilty plea and Griffin would have maintained his plea of not guilty.

First, by pleading guilty, Griffin waived all non-jurisdictional challenges to his conviction, including claims of pre-plea ineffective assistance of counsel, that do not relate to his decision to plead guilty. *See Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981). Courts have applied this principle to claims that counsel failed to conduct a proper investigation into the facts of a case, since they do not relate to the voluntariness of a plea. *See, e.g.*, *Caceres v. United States*, No. 13-22901-CIV, 2014 WL 5761112, at *12 (S.D. Fla. Nov. 5, 2014) (citations omitted).

Even if not waived, Griffin's contention is without merit, since he cannot establish deficient performance or prejudice. As the Supreme Court explains:

> Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003).

It was unnecessary for Griffin's counsel to interview the attorneys he used to run his business before providing informed advice on whether he should consider the plea agreement and plead guilty. Counsel was aware of the fraud perpetrated by Griffin through his business, as alleged in the indictment and summarized in the proposed plea agreement. And he knew that Griffin faced a mandatory consecutive sentence on the identity theft count, which the government was offering to dismiss as part of the plea agreement. Griffin admits that he discussed the agreement with counsel before deciding to plead guilty. (cr. Dkt. 77 at 7). It was reasonable for counsel to recommend acceptance of the plea agreement under the circumstances.

As noted, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial," and "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford*, 748 F.2d at 1508. Counsel is only required to independently examine the facts and circumstances and the law, and offer his informed opinion as to the best course to be followed.

As discussed, Griffin stipulated in the plea agreement that victims conveyed their properties to entities he managed and controlled and paid rent to him, that he prevented creditors from foreclosing on the properties by filing fraudulent bankruptcies, and that, when examined by

the Office of United States Trustee, he denied knowledge about bankruptcy petitions he prepared. (cr Dkt. 37 at 15-18). He essentially admits as much in his filings in this case. *See, e.g.*, (cv Dkt. 9 at 10). He does not explain what additional investigation was necessary before counsel could provide informed advice, or how that additional investigation would have made a difference to his decision to plead guilty. He was charged with perpetrating a fraud, notwithstanding the participation of attorneys in his business operation.[8] And as he explained at sentencing, the attorneys did not advise him to file false bankruptcy petitions or to falsely swear under oath to the bankruptcy court. (cr Dkt. 69 at 12-13). They merely handled "foreclosure things" and "real estate for [him]" (Id.). In sum, he has not demonstrated that counsel's failure to interview the attorneys undermined the knowing and voluntary nature of his guilty plea, or that counsel's failure fell below the standard of constitutionally effective assistance. He has therefore not demonstrated deficient performance or resulting prejudice.

---

[8] Title 18 U.S.C. § 157 provides,

> A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—
>
> (1) files a petition under title 11, including a fraudulent involuntary petition under section 303 of such title;
> (2) files a document in a proceeding under title 11; or
> (3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title
>
> shall be fined under this title, imprisoned not more than 5 years, or both.

And under section 152(2), a "person who . . . knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11 … shall be fined under this title, imprisoned not more than 5 years, or both."

As counsel explains, "It was agreed between [counsel and Griffin] that blaming his attorneys and staff for the fraudulent bankruptcy petitions was not a defense that was likely to succeed. This is one of the primary reasons why [Griffin] pled guilty." (Dkt. 5-1 at 7). Griffin does not expressly refute this averment.

## II. Instructions to the Testifying Attorney

Griffin alleges that when Attorney Montanez arrived for the sentencing hearing, counsel instructed him "not to say anything about the case at all." (cv Dkt. 2 at 15). In Griffin's words, counsel explained why he "did not want Montanez to fully discuss his role in the representation of [Griffin], by and through his companies," and Griffin "disagreed with this tactical approach." (Id.). Griffin contends Montanez' statements "did not encompass his role in representations and filings on behalf of [Griffin]." (Id.).

As discussed, however, the involvement of attorneys, including Montanez, in Griffin's business does not mitigate the fraud he perpetrated. Nor does Griffin explain how anything Montanez would have said would have impacted his sentence. He acknowledges that counsel's decision not to call Montanez was a "tactical approach" that was explained to him, although he disagreed with it. (cv Dkt. 2 at 15). Indeed, reliance on the participation of attorneys in his business could have been perceived as Griffin shifting the blame and failing to accept responsibility. Counsel made a reasonable decision to limit the attorney's statements to his opinion that Griffin is of "good character" and "intends to help people." (cr Dkt. 69 at 11). Accordingly, Griffin does not establish cause or prejudice on this claim of ineffective assistance of counsel.

## III. Providing the Wrong Time to Other Witnesses and Failing to Seek a Continuance

Griffin contends that "[t]wo other attorneys had intended to provide supporting testimony at the sentencing hearing[. H]owever trial counsel provided them the wrong time for the hearing." (cv Dkt. 2 at 15). He complains that counsel "did not seek a delay of the hearing," and "neither of the two attorney[s] arrived in time to provide any testimony on [Griffin's] behalf." (Id.). The rescheduling of the sentencing hearing was addressed at during the hearing:

> Counsel: First of all, I apologize to the Court for not being here on time. I can assure you that I thought it was at 3:00.
>
> The Court: Well, it was originally scheduled for 3, and [it was] indicated more likely than not we changed it to 2, and it may not have been caught. No problem.
>
> Counsel: I sincerely apologize. It was not Mr. Griffin's fault. I told him when it was. That's what happened.

(cr Dkt. 69 at 4). Later, counsel noted, "[d]ue to the time, I think we were told -- Mr. Griffin may have told one of his witnesses 3:00, but we do have Mr. Felix Montanez here, who we'd like to call briefly." (Id. at 10). In anticipation that the other witnesses may appear late, counsel requested that the government's witnesses be heard first, which was granted. Afterwards, the court inquired whether the other witnesses had arrived. (Id. at 25). After informing the court that the witnesses had not arrived, counsel made arguments relating to § 3553. (Id.).

Griffin provides no authority finding deficient performance in these circumstances, when a hearing is rescheduled by the court. Even assuming deficient performance, Griffin does not demonstrate prejudice. He does not provide affidavits from the witnesses who were not called, or any indication of what their statements would have been.[9] And Griffin does not explain how additional witness statements would have resulted in a lower sentence, especially if their statements would have been duplicative of Montanez'.

In sum, by pleading guilty, Griffin waived any claim that his attorney's pre-plea representation was ineffective. Even if not waived, he has not demonstrated deficient performance or prejudice resulting from the claimed deficient performance. And counsel's tactical decisions

---

[9] Counsel avers he "is unaware of the other two witnesses which [Griffin] refers to and there was never any information provided to [him] about other witnesses." (Dkt. 5-1 at 6).

during sentencing have not been shown to have been unreasonable and deficient, or that Griffin suffered prejudice as a result. The record demonstrates that counsel's advice concerning the guilty plea and tactical decisions during sentencing were within the range of reasonable professional competence. Accordingly. Ground Three is denied.

## IV.    Certificate of Appealability ("COA")

A COA will not be granted. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citation omitted). Griffin cannot meet this standard. Because he is not entitled to a COA, he is not entitled to appeal in forma pauperis.

**CONCLUSION**

Petitioner Griffin's § 2255 motion is **DENIED**. The Clerk is directed to **CLOSE** the case.

**DONE AND ORDERED** this 30th day of December, 2019.

*/s/ James D. Whittemore*
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Petitioner, Counsel of Record